<span style="color:red">CORRECTED</span>

# In the United States Court of Federal Claims

No. 21-922
Filed: November 4, 2021

|  |  |
|---|---|
| AYINDE MOHN, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*. | ) ) ) |

*Ayinde Mohn*, Tulsa, Oklahoma, *pro se*.

*Matthew P. Roche*, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *Brian M. Boynton*, Acting Assistant Attorney General, *Martin F. Hockey, Jr.*, Acting Director, and *Steven J. Gillingham*, Assistant Director, for the Defendant.  *Dondrae N. Maiden* and *Kristen D. Kokinos*, U.S. Department of the Interior, Office of the Solicitor, Indian Trust Litigation Office, *of counsel*.

### OPINION AND ORDER

**MEYERS, Judge.**

      This is the nineteenth action filed by Ayinde Mohn challenging the Government's refusal to recognize him as the descendant of Cherokee ancestors, thereby denying him the millions of dollars that he claims the Government owes him. None of Mr. Mohn's prior lawsuits have provided the relief he seeks.

      The Court must dismiss this lawsuit as well. First, to the extent Mr. Mohn seeks a writ of mandamus, that relief is plainly outside this Court's jurisdiction. Second, because Mr. Mohn seeks relief for claims that accrued more than six years before he filed his complaint in this action, the Court must dismiss these claims as well. Even if Mr. Mohn's claims were not time-barred, at least one of his prior lawsuits raised all the underlying facts alleged in the present lawsuit and proceeded to final judgment. As such, claim preclusion also bars Mr. Mohn's claims here.

      Given Mr. Mohn's repeated litigation of the same issues, the Government also moves for an anti-filing injunction directing the Clerk not to accept any future pleadings from Mr. Mohn on these issues. For the reasons explained below, the Court grants this motion as well, and will

direct the Clerk not to accept any new complaints from Mr. Mohn without leave from the Chief Judge of the United States Court of Federal Claims.

**I.  Background**

While the factual history of this case has been presented in detail in numerous other cases that Mr. Mohn has brought, the Court summarizes here the historical events relevant to his claims here.  In the 1830s, the Cherokee Nation, to include the Cherokees' slaves, was forcibly removed from the southeastern United States. ECF No. 20 at 2-3.  In 1866, the Cherokee Nation and the United States entered a treaty in which slavery was abolished within the Cherokee Nation and former slaves became "Cherokee Freedmen."  *Id.* at 3.

Congress established the Dawes Commission in 1893 to negotiate agreements to secure allotment of tribal lands to members of the Cherokee Nation and four other tribes. *Id.*  In 1898, Congress passed the Curtis Act allowing allotment to proceed.  *Id.*  The Curtis Act stipulated two rolls be prepared: one for former slaves, called the "Freedmen" roll and the other for Indians by blood, called the "Indian" roll.  *Id.*  With respect to the Cherokee Nation, the Curtis Act was explicit that the Cherokee Nation Census of 1880 would be the "only roll intended to be confirmed by this and preceding Acts of Congress . . . ." *Id.* (quoting Section 21, 30 Stat. 495 (1898)).  Notably, the Cherokee Nation Census of 1880 excluded Cherokee Freedmen.  *Id.*  The Dawes Commission had authority to investigate the rights of persons whose names appeared on other rolls and determine individuals' legal right to enroll in its Dawes Rolls, the final rolls of Cherokee Nation citizens and freedmen.  *Id.*  Subsequently, the Cherokee Nation negotiated an agreement with the Dawes Commission in which it was agreed that for allotment purposes, the Cherokee Nation's membership would only encompass the Indian roll portion of the Dawes Rolls.  *Id.* at 4.  In 1908, Congress confirmed the Dawes Rolls as the only conclusive evidence for Cherokee Nation citizenship and associated Freedmen.  *Id.*

Mr. Mohn alleges that around 1900, Thomas Needles, a commissioner on the Dawes Commission, unlawfully classified Mr. Mohn's Reese ancestors as Cherokee Freedmen on the Dawes Rolls. ECF No. 1 at 20-23; 46-47; 68-69.[1]  As a result, Mr. Mohn claims that "488 . . . Restricted homestead acres . . . allotted by [the U.S. Department of Interior ("Interior")] to the Reese family" between 1902 and 1906, lost their "restricted" status and were unlawfully conveyed without the approval of the Secretary of the Interior. *Id.* at 8, 11.  Additionally, Mr. Mohn alleges that Interior improperly denied his application for a Certificate of Degree of Indian Blood ("CDIB").  *Id.* at 69.  Lastly, Mr. Mohn seeks a writ of mandamus to (1) "recover from the Cherokee Nation all individual Indian funds of the Reese family trust of 488 acres of the Restricted lands in the Cherokee Nation territory of Oklahoma, in the amount of $100,000,000.00 (one hundred million dollars)" and (2) compel legal representation by a United States Attorney.  *Id.* at 3, 8 (emphasis omitted).

The record reflects that (not including this case) Mr. Mohn filed at least eight cases in this Court, ten cases in federal district courts in Oklahoma, and two appeals to the United States

---

[1] Because the Complaint does not include numbered paragraphs, the Court refers to page numbers.

Court of Appeals for the Tenth Circuit seeking the same or similar relief to what he seeks here. These cases are:

(1) *Mohn v. United States*, No. 15-321 (Fed. Cl.);

(2) *Mohn v. United States*, No. 15-409 (Fed. Cl.);

(3) *Mohn v. United States*, No. 16-211 (Fed. Cl.);

(4) *Mohn v. United States*, No. 16-618 (Fed. Cl.);

(5) *Mohn v. United States*, No. 16-655 (Fed. Cl.);

(6) *Mohn v. United States*, No. 16-740 (Fed. Cl.);

(7) *Mohn v. United States*, No. 16-741 (Fed. Cl.);

(8) *Mohn v. Zinke, et al.*, No. 16-cv-291 (E.D. Okla.);

(9) *Mohn v. Zinke, et al.*, No. 16-cv-292 (E.D. Okla.);

(10) *Mohn v. Zinke, et al.*, No. 16-cv-293 (E.D. Okla.);

(11) *Mohn v. Zinke, et al.*, No. 16-cv-310 (E.D. Okla.);

(12) *Mohn v. Jewell*, et al., No. 16-cv-460 (N.D. Okla.);

(13) *Mohn v. Zinke, et al.*, No. 16-cv-466 (E.D. Okla.);

(14) *Mohn v. Zinke, et al.*, No. 16-cv-473 (E.D. Okla.);

(15) *Mohn v. Zinke, et al.*, No. 16-cv-495 (E.D. Okla.);

(16) *Mohn v. Zinke, et al.*, No. 16-cv-499 (E.D. Okla.);

(17) *Mohn v. Zinke, et al.*, No. 16-cv-500 (E.D. Okla.);

(18) *Mohn v. United States*, No. 20-771 (Fed. Cl.).

Except for Case No. 20-771, which is pending before Judge Wolski, all these cases were either dismissed for lack of jurisdiction (*i.e.*, all the cases before this Court), standing, or failure to state a claim.  *See* ECF No. 20 at 6-9 & n.4.  And Mr. Mohn appealed two of the District Court decisions to the Tenth Circuit wherein the District Courts' dismissals were affirmed.  *See Mohn v. Zinke*, 688 F. App'x 554 (10th Cir. 2017); *Mohn v. Zinke*, 718 F. App'x 762 (10th Cir. 2018).

**II.     Discussion**

    **A.     Jurisdiction and standard of review**

The Tucker Act provides subject matter jurisdiction for this Court and states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1); *United States v. Mitchell*, 445 U.S. 535, 538 (1980). But the Tucker Act is "a jurisdictional statute, it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). To invoke this Court's jurisdiction, Mr. Mohn must identify a "separate source of substantive law that creates the right to money damages." *Greenlee Cnty. v. United States*, 487 F.3d 871, 875 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 492 F.3d 1167, 1172 (Fed. Cir. 2005)). If Mr. Mohn fails to establish jurisdiction under the Tucker Act, this Court must dismiss the complaint under RCFC 12(b)(1). *Outlaw v. United States*, 116 Fed. Cl. 656, 658-59 (2014).

When deciding a Rule 12(b)(1) motion to dismiss, the Court must assume all the undisputed facts in the complaint are true and draw all reasonable inferences in the nonmovant's favor. *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). The Court holds pleadings made by *pro se* plaintiffs to a less stringent standard and liberally construes language in the plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

But even a *pro se* plaintiff must meet his jurisdictional burden. *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("We agree that leniency with respect to mere formalities should be extended to a *pro se* party, . . . [h]owever, . . . a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."). "*Pro se* or not, the plaintiff still has the burden of establishing by a preponderance of the evidence that this Court has jurisdiction over its claims." *Rothing v. United States*, 132 Fed. Cl. 387, 390 (2017) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Although a litigant has the right to act as his or her own attorney, it is well established that the right of self representation is not a license to fail to comply with the applicable rules of procedural and substantive law." *Walsh v. United States*, 3 Cl. Ct. 539, 541 (1983) (citing *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975)).

And "[a] motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And to be "plausible on its face," it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on

its face."). In other words, the Complaint must contain enough detail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted). Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314–15 (Fed. Cir. 2006)).

### B.  This Court lacks Subject Matter Jurisdiction

#### 1.  This Court lacks jurisdiction over the Cherokee Nation of Oklahoma.

While it is unclear in the Complaint what specific relief Mr. Mohn seeks from the Cherokee Nation of Oklahoma, he appears to seek $100,000,000. *See* ECF No. 1 at 8. And after the Cherokee Nation did not respond to his lawsuit, Mr. Mohn filed a motion for default judgment against it seeking "the per capita payment allegations brought by Plaintiff Mohn in the amount of $100,000,000 (one hundred million dollars) against their sovereign nation." ECF No. 23 at 8. As this Court explained in denying Mr. Mohn's motion for default judgment, however, our jurisdiction does not extend to claims against any party other than the United States. *See* ECF No. 24 at 1. "[I]f the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the [Court of Federal Claims]." *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (citations omitted). Therefore, the Court lacks jurisdiction over any claims against the Cherokee Nation of Oklahoma and dismisses them.

#### 2.  This Court lacks jurisdiction to issue a writ of mandamus.

The Court also lacks jurisdiction to issue the two writs of mandamus that Mr. Mohn seeks in this case. Mr. Mohn apparently seeks one writ "to recover from the Cherokee Nation all individual Indian funds of the Reese family trust of 488 acres of the Restricted lands in the Cherokee Nation territory of Oklahoma, in the amount of $100,000,000.00 (one hundred million dollars)." ECF No. 1 at 8 (emphasis omitted).[2] Mr. Mohn also seeks a writ "to require the District Attorney of the United States to perform a ministerial duty owed to plaintiff Mohn; to represent him in all suits at law or in equity." *Id.* at 5 (emphasis omitted). While Mr. Mohn argues that mandamus is the proper remedy, he does not address what authorizes *this Court* to grant such relief. Notably, he appears to be confused as to the Court's jurisdiction by captioning his Complaint "United States Court of Federal Claims for the Tenth Circuit." ECF No. 1 at 1. This Court, however, is not part of the Tenth Circuit and, as a trial court, does not have the authority "to require a lower court" to do anything because the District Courts are not "lower courts" in relation to this Court. *But see id.* at 70.

And it is well-settled that this Court lacks jurisdiction to issue a writ of mandamus to Government officials because Congress vested that jurisdiction solely with the district courts: "The district courts shall have original jurisdiction of any action in the nature of mandamus to

---

[2] Even though the Court dismissed all claims against the Cherokee Nation in Section A.1 of this opinion, it addresses the two writs of mandamus separately to ensure a complete resolution of all the issues in this case.

compel an officer or employee of the United States or agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361; *Del Rio v. United States*, 87 Fed. Cl. 536, 540 (Fed. Cl. 2009) ("The Court of Federal Claims lacks jurisdiction to hear mandamus petitions, and therefore, this court may not issue a writ of mandamus as requested . . . ."). Therefore, even if Mr. Mohn is correct that issuance of writs of mandamus is proper, this Court lacks jurisdiction to adjudicate those claims.

### 3. Mr. Mohn's Claims are time barred.

The Government moves to dismiss the remainder of Mr. Mohn's Complaint because he did not file his claims before the Court within six years of their accrual. ECF No. 20 at 11-13. "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. The Supreme Court has "long interpreted the court of claims limitations statute as setting forth [a 'jurisdictional'] limitations period." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). A cause of action accrues "when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988). Because Mr. Mohn failed to file his Complaint within six years of his claims' accrual, the Court does not have jurisdiction.

First, Mr. Mohn bases much of his claims on the alleged unlawful activity of Mr. Thomas Needles, a commissioner on the Dawes Commission. *E.g.*, ECF No. 1 at 20-24, 45-47, 53, 68-71. Thomas Needles's actions occurred more than a century ago, well beyond Section 2501's six-year statute of limitations. And Mr. Mohn bases his allegations on evidence that has been publicly available for more than a century as well. In his Complaint, he alleges that "Mr. Needles' heinous crimes were first exposed by the Indian Rights Association, investigated by the Secretary, and finally published by all of the national newspapers throughout the land (in 1903)." *Id*. at 38. Therefore, regardless of the propriety of Mr. Needles's actions, to the extent Mr. Mohn seeks relief for alleged misconduct in the preparation of the Dawes Commission Rolls, such claims are time-barred.

Second, Mr. Mohn challenges the Bureau of Indian Affairs' ("BIA") denial of his CDIB. *See id*. at 14-15. These claims are time-barred as well. On May 29, 2014, BIA formally denied Mr. Mohn's CDIB application and informed him that his matter was closed, and that no further action would be taken on his application. ECF No. 20 at App'x 8.[3] Accordingly, Mr. Mohn had until May 29, 2020 to file a suit, *i.e.,* six years after his claims accrued. 28 U.S.C. § 2501. However, Mr. Mohn did not file his Complaint until February 12, 2021. ECF No. 1. Because Mr. Mohn filed the Complaint more than six years after the BIA's final decision, the Court lacks jurisdiction over these claims.

---

[3] The Court may consider Mr. Mohn's correspondence with the Government when deciding the Government's motion under RCFC 12(b)(1). *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) ("In deciding such a Rule 12(b)(1) motion, the court can consider, as it did in this case, evidentiary matters outside the pleadings.") (citations omitted)

In response, Mr. Mohn argues that the Federal Government may, in some circumstances, sue to enforce an Indian's rights after the expiration of an applicable statute of limitations. ECF No. 21 at 13-14. But these cases do not save his claim because he is suing the United States. That the United States may sue to protect an Indian's rights after the expiration of a statute of limitations does not mean that Mr. Mohn can sue the United States after the expiration of the statute of limitations applicable to his action.

### C.   In the Alternative, Mr. Mohn's Claims Are Barred by Claim Preclusion

Even if the Court had jurisdiction over Mr. Mohn's claims, the Government also argues that his claims are barred by the doctrine of claim preclusion (*res judicata*) because the claims involve the same parties and rely on the same facts that were finally adjudicated in *Mohn v. Jewell et al.*, among other cases. No. 16-460, 2016 WL 7223388 (N.D. Okla. Dec. 13, 2016) ("*Mohn VIII*")[4], *aff'd sub nom. Mohn v. Zinke*, 688 F. App'x 554, 557 (10th Cir. 2017) (concluding that dismissal was appropriate because "Plaintiff lacks standing and/or fails to state a claim upon which relief can be granted"); ECF No. 20 at 19-22. The Court agrees.

Claim preclusion will bar litigation when: "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003). Here, the first element is readily satisfied. The parties in the instant matter are identical to the parties in *Mohn* VIII—the United States and Ayinde Mohn. To the extent Mr. Mohn argues that his prior claims were against a federal agency or official, such entities are in privity with the United States for purposes of claim preclusion. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is [barred by claim preclusion thereby stopping] relitigation of the same issue between that party and another officer of the government."); *First Mortg. Corp. v. United States*, 142 Fed. Cl. 164 (2019) (noting that there is privity between officers of the same government for claim preclusion purposes). Thus, the first element of claim preclusion is satisfied.

The second element of claim preclusion focuses on whether the first suit proceeded to a final judgment on the merits. Here, *Mohn VIII* resulted in a final judgment on the merits for the purposes of claim preclusion. In *Mohn VIII*, the District Court found, and the Tenth Circuit affirmed, that Mr. Mohn "was not entitled to a CDIB, . . . or any other relief sought because Mr. Mohn's Reese Ancestors were enrolled as Cherokee Freedmen, not native Cherokee." ECF No. 20 at 22 (citing *Mohn VIII*, 2016 WL 7223388, at *5; *Mohn*, 688 F. App'x at 557). And "[t]he [district] court ultimately concluded that Mohn failed to state a claim upon which relief could be granted, denied Mohn's motion for IFP status, and dismissed the matter with prejudice." *Mohn*, 688 F. App'x at 556. A dismissal for failure to state a claim is an adjudication on the merits for claim preclusion purposes. *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (citation omitted); *Esch v. United States*, 77 Fed. Cl. 582, 591

---

[4] Because the Government refers to this case as "*Mohn VIII*" throughout its briefing, the Court does so as well.

(2007). Because the prior suit had a final adjudication on the merits, the second element of claim preclusion is satisfied.

Finally, the Government argues that the facts in this case are identical to those alleged in *Mohn VIII*. This Court agrees. In *Mohn VIII*, Mr. Mohn alleged that his Hendricks and Reese ancestors were improperly enrolled as Cherokee Freedmen, meaning that their allotted lands should have been "restricted" and not subject to alienation. *See Mohn*, 688 F. App'x at 556. Here, he alleges the same as to his Reese ancestors. ECF No. 1 at 8-11. Similarly, in *Mohn VIII* Mr. Mohn claimed entitlement to a CDIB based on the improper enrollment of his ancestors as Cherokee Freedmen. *Mohn*, 688 F. App'x at 556. Here as well. ECF No. 1 at 14, 54, 69. As the Government argues, Mr. Mohn alleged in both cases "erroneous enrollment of Mr. Mohn's ancestors and others as Cherokee Freedmen, and the purported consequences thereof." ECF No. 20 at 21.

Mr. Mohn contends that claim preclusion does not bar subsequent claims when Congress created new statutory rights after the prior litigation. ECF No. 21 at 18. Whatever the merits of this argument, Mr. Mohn does not identify any new statutory rights that he claims entitle him to the relief he seeks. Rather, he points to changes to this Court's jurisdiction that Congress adopted in 1949. *Id.* There is nothing about that change that impacts Mr. Mohn's litigation given that all *his* litigation commenced well after 1949. *See supra* at 2-3 (listing Mr. Mohn's litigation matters, all of which were filed in or after 2015).

Even if this Court had jurisdiction over his claims, they are properly dismissed because of his prior litigation. As a result of claim preclusion, Mr. Mohn cannot relitigate these issues here. As the Tenth Circuit held in its opinion in Mr. Mohn's second appeal:

> In *Mohn I*,[5] we held that (1) Mohn lacked standing to pursue IIM account funds on an heir theory; (2) Mohn had unsuccessfully sought funds under the Indian Trust Settlement and did not opt out of the settlement; (3) the documents attached to Mohn's complaint failed to show that the Reeses were Native Cherokee; and (4) Mohn's own submissions belied his allegation that he had any existing IIM account of his own, which he could have used for a separate claim.

*Mohn v. Zinke*, 718 F. App'x 762, 764 (10th Cir. 2018). As a result, the Circuit affirmed the dismissal of another of Mr. Mohn's claims, Case No. 16-cv-473 (E.D. Okla.). According to the Circuit: "like his other cases, [Mr. Mohn] seems to be seeking funds through his grandparents— the Reeses. We have already determined that Mohn lacks standing and has failed to allege a plausible claim for recovering IIM account funds through the Reeses or individually . . . . Thus, his 'instant attempt to raise these same arguments fails yet again, whether based on res judicata, precedent, or both.'" *Id.* (quoting *Fogle v. Gonzales*, 597 F. App'x 485, 488 (10th Cir. 2015)) (internal citation omitted).

---

[5] Here the Circuit is referring to its opinion in Mr. Mohn's first appeal as "*Mohn I*."

For these reasons, Mr. Mohn may not relitigate the issues that he raised in his prior litigation. Therefore, even if the Court had jurisdiction, dismissal is proper for failure to state a claim.

### III.   Anti-Filing Injunction

As part of its motion to dismiss, the Government also moves for an anti-filing injunction prohibiting Mr. Mohn from filing further actions in this Court because of his repeated litigation of the same issues. The Court agrees. Mr. Mohn has sought the same or very similar relief in nineteen lawsuits, including nine in this Court (including this case). He seeks relief that the Tenth Circuit has explicitly held he is not entitled to. *Mohn*, 688 F. App'x at 556-57. And each of his filings requires the Court and the Department of Justice to expend significant resources to address. Here, his Complaint is 70 pages that are difficult to decipher, and his response to the Government's motion to dismiss, which he filed one day after the Government's motion and fails to squarely address the Government's arguments, is 56 pages. *See* ECF Nos. 1 & 21. He is not entitled to file a *twentieth* lawsuit seeking the same relief that has been rejected by Courts numerous times before.

And Mr. Mohn indicates that he does plan to continue filing lawsuits seeking the same relief. He opens his Complaint with a recitation of the Parable of the Persistent Widow, sometimes referred to as the Parable of the Unjust Judge. The Parable reads:

> (18) Then He spoke a parable to them, that men always ought to pray and not lose heart, (2) saying: "There was in a certain city a judge who did not fear God nor regard man. (3) Now there was a widow in that city; and she came to him, saying, "Get justice for me from my adversary." (4) And he would not for a while; but afterward he said within himself, "Though I do not fear God nor regard man, (5) yet because this widow troubles me I will avenge her, lest by her continual coming she weary me."
>
> (6) Then the Lord said, "Hear what the unjust judge said. (7) And shall God not avenge His own elect who cry out day and night to Him, though He bears long with them? (8) I tell you that He will avenge them speedily.

ECF No. 1 at 2 (quoting Luke 18:1-8 (New King James Version)). Like the Persistent Widow, Mr. Mohn appears intent on continuing to sue in the hopes that the Court will someday grant him relief simply to get him to stop filing lawsuits. That is not a viable litigation strategy or proper use of the courts. For this reason, the Court grants the Government's motion for an anti-filing injunction.

### IV.   Conclusion

For the reasons stated above:

1. The Government's motion to dismiss and for an anti-filing injunction (ECF No. 20) is **GRANTED**. The Clerk of the United States Court of Federal Claims is directed to not accept

9

any future complaint filed by Mr. Ayinde Mohn unless filed by leave of the Chief Judge of this Court.  In seeking leave to file a future complaint, Mr. Ayinde Mohn must explain how his proposed complaint raises *new* matters that he has not, and could not have, previously litigated, and which are properly within this Court's jurisdiction.  RCFC 11(b)-(c) (barring the filing of unwarranted or frivolous claims).  For the avoidance of doubt, this Order does not apply in any way to Matter No. 20-771, which is currently pending before Judge Wolski.

2. Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**.

3. Plaintiff's motion for summary judgment is **DENIED AS MOOT**.

4. The Clerk of the United States Court of Federal Claims is directed to enter judgment dismissing the complaint for lack of subject matter jurisdiction, or in the alternative for failure to state a claim upon which relief may be granted.

**IT IS SO ORDERED.**

                                                <u>s/ Edward H. Meyers</u>
                                                Edward H. Meyers
                                                Judge